REED SMITH LLP
James C. McCarroll
Jordan W. Siev
Kurt F. Gwynne (*pro hac vice* pending)
599 Lexington Avenue
New York, NY 10022-7650
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
Email: jmccarroll@reedsmith.com
          jsiev@reedsmith.com
          kgwynne@reedsmith.com

*Proposed Counsel for the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Caribbean Commercial Investment Bank Ltd., | Case No.: 16-13311 (SMB) |
| Debtor. | |

**DECLARATION OF WILLIAM TACON**
**PURSUANT TO LOCAL RULE 1007-2**

I, William Tacon, declare as follows:

1.    By an Order dated February 22, 2016 (the "First Administration Order"), the Eastern Caribbean Supreme Court in the High Court of Justice Anguilla Circuit (the "High Court") appointed me as the administrator (the "Administrator") of Caribbean Commercial Investment Bank Ltd. (the "Debtor"). A true and correct copy of the First Administration Order is attached as Exhibit A.

2.    I have personal knowledge of the statements set forth in this Declaration or such statements are based upon my review of the books and records of the Debtor, which books and records were kept in the regular course of the Debtor's business and relied upon by the Debtor's

employees in conducting the Debtor's banking business.  Those books and records also included data compiled in the ordinary course of the Debtor's banking business.

3.      I make this declaration pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York.

## I.      NATURE OF THE DEBTOR'S BUSINESS AND ITS CAPITAL STRUCTURE

4.      The Debtor is a commercial bank incorporated and licensed in Anguilla.

5.      The Debtor's headquarters are located at 2 St. Mary's Street, The Valley, Anguilla.

6.      Caribbean Commercial Bank (Anguilla) Ltd. ("CCB") is the sole shareholder of the Debtor.  CCB is incorporated pursuant to the laws of Anguilla as a privately-owned company.

7.      The Debtor no longer has any employees.  When input is required, it is provided by employees of National Commercial Bank of Anguilla Ltd. ("NCBA"), the successor to CCB (as discussed below).

8.      Upon information and belief, (a) the Debtor has no secured creditors, and (b) the Debtor's only material creditors are its depositors.  The Debtor has three hundred thirty-three (333) known depositors with a positive account balance.

## II.     CIRCUMSTANCES LEADING TO THE DEBTOR'S FILING FOR RELIEF UNDER CHAPTER 11

### A.      The Debtor's Net Transfer of Approximately $5.9 Million to CCB

9.      Between August 12, 2013, and April 22, 2016, the affairs of CCB were subject to the control of the Eastern Caribbean Central Bank (the "ECCB"), which was the regulator of CCB, through a process of conservatorship pursuant to powers conferred on the ECCB by the Eastern Caribbean Central Bank Agreement Act.

- 2 -

10.     On April 22, 2016, the ECCB appointed a receiver to CCB.  At 4:00 p.m. on April 22, 2016, CCB ceased banking operations in Anguilla.  According to a press release issued by the ECCB, CCB's banking operations were transferred on April 22, 2016, to NCBA, a newly established bank apparently wholly-owned by the Government of Anguilla.

11.     Between August 12, 2013 and March 24, 2016 (the "Relevant Period"), the Debtor's affairs were conducted in accordance with instructions given by, and under the management control of, individuals appointed by the ECCB as conservators of CCB.  Those individuals were Messrs. Martin Dinning, Hudson Carr, and Shawn Williams (each a "Conservator Director" and, collectively, the "Conservator Directors").  All of the Conservator Directors were based in Anguilla during their periods of office, although they were not residents or citizens of Anguilla.  All Conservator Directors appear to have operated under the close control or supervision of the ECCB.

12.     On or about August 15, 2013, the ECCB or Mr. Dinning, as Conservator Director acting on behalf of CCB, dismissed the appointed directors of the Debtor.  From August 15, 2013, until February 22, 2016, the Debtor had no *de jure* directors and therefore acted solely in accordance with the instructions of, and under the management control of, the Conservator Directors acting from time to time.

13.     From February 22, 2016, until March 24, 2016, in accordance with the terms of my appointment as Administrator, I sub-contracted the management of the day-to-day operations of the Debtor to CCB (by and through Mr. Williams, as Conservator Director of CCB).

14.     Throughout the Relevant Period, based upon my experience as a Chartered Accountant and my review of the Debtor's financial statements provided to me by the FSC and those responsible for managing the business of the Debtor, I believe that the Debtor was

insolvent on a balance sheet test. It appears that the Debtor also may have been unable to pay its debts as they fell due, at least during the latter part of the Relevant Period and thereafter. Based upon my review of financial statements for CCB and my understanding of its financial position, I also believe that CCB was illiquid, dependent upon the Debtor for its liquidity (at least in part), and unable to settle the large amount CCB owed to the Debtor. Based on such analysis, and my experience, I believe that CCB was insolvent, at least during the latter part of the Relevant Period.

15.     Notwithstanding the insolvency of CCB during the Relevant Period, the Conservator Directors (acting on behalf of the Debtor) procured or permitted the payment to CCB of (i) all monies received by the Debtor from depositors denominated in U.S. Dollars and (ii) the proceeds of all assets of the Debtor realized or collected during the Relevant Period, also denominated in U.S. Dollars (together, the "Funds").

16.     I believe the Funds were deposited into one or more bank accounts in the U.S. at Bank of America and that a portion of such Funds may still remain in such accounts.

17.     At the close of business on April 25, 2016, at my direction, the Debtor ceased accepting new deposits as I determined that trading should cease immediately. Between the time of my appointment as Administrator and the date upon which I caused the Debtor to cease accepting deposits, the Debtor was accepting deposits.

18.     The gross amount of the Funds paid to or collected by CCB during the Relevant Period was US$26,983,662.05. A net amount of US$5,927,991.11 remains owing to the Debtor.

19.     None of CCB, NCBA, the ECCB, or the Conservator Directors to whom I have reached out for information and explanations relating to the transfer of the Funds to CCB (while it was insolvent) has been forthcoming with answers. In addition, despite repeated requests,

I have received no indication that CCB or NCBA will repay any of the net Funds outstanding. My enquiries indicate that no provision has been made for NCBA to make repayment, and CCB is in receivership and recognized as being insolvent.

20.    Based on my investigations, including discussions with representatives of CCB and NCBA, I believe that all of the Funds were received into one or more bank accounts in the United States (and in this District) and there is a strong possibility that some money will still be held in those accounts. The Debtor did not receive reasonably equivalent value in exchange for the transfer of the Funds, and the Debtor was insolvent (or was rendered insolvent) by the transfer of the Funds to CCB. I have commenced legal proceedings in Anguilla against NCBA for the return of this money and sought leave of the Court to commence an identical proceeding against CCB. (Under the terms of the Banking Act 2015, such consent is required before proceedings can commence against CCB).

**B.    The Anguillian Proceeding**

21.    The Debtor was regulated by the Financial Services Commission in Anguilla ("FSC"). In light of developments with the conservatorship of CCB (discussed above), the FSC found it was no longer appropriate to maintain the status quo, and determined that the appointment of an independent representative would best protect the rights of the Debtor and its creditors.

22.    Subsequently, upon the application of the FSC, and entry of the First Administration Order, the High Court placed the operations of the Debtor and another offshore bank, the National Bank of Anguilla (Private Banking & Trust) Ltd. ("PBT" and together with the Debtor, the "Offshore Banks") under administration pursuant to section 31(2)(b) of the Financial Services Commission Act (with respect to the Debtor, the "Anguillian Proceeding").

23.    By the First Administration Order, the High Court appointed me as the Administrator of the Offshore Banks (the "<u>Administrator</u>").  *See* First Administration Order at ¶ 2.

24.    As the court-appointed Administrator of the Debtor, I have complete control of the management of the Debtor pursuant to section 31(2)(b) of the Financial Services Commission Act, R.S.A. c. F28 (the "<u>FSC Act</u>").  *See* First Administration Order at ¶ 3.

25.    The High Court specifically authorized me, as an officer of the High Court, "to act in Anguilla or any foreign jurisdiction where I believe[] assets and property of the Offshore Banks may be Situate . . . [to] commence [or] continue . . . without further Order of this Honorable Court any proceeding or action . . . in a foreign jurisdiction for the purpose of fulfilling [my] duties and obligations under this Order."  *See* First Administration Order at ¶ 8.

26.    The High Court further authorized me "to seek the assistance of any Court of a foreign jurisdiction in the carrying out of the provisions of this Order . . ., including without limitation, an order of examination of persons believed to be knowledgeable of the affairs, assets and property of the Offshore Banks and to assist the Administrator in the recovery of the assets and property of the Offshore Banks."  *See* First Administration Order at ¶ 8.

27.    The First Administration Order also authorized me, as Administrator, to "sell, charge or otherwise dispose of the assets of the Offshore Banks."  *See* First Administration Order at ¶ 13(c).

28.    The First Administration Order requires me to report to the High Court regarding the winding up of the Offshore Banks or of any part of the business of the Offshore Banks.  *See* First Administration Order at ¶ 5(c).

29.    In addition, the High Court entered an Order dated May 19, 2016 (the "Second Administration Order"). A true and correct copy of the First Administration Order is attached as Exhibit B.

30.    The Second Administration Order expressly conferred upon me the powers of a liquidator under the Companies Act, as permitted by section 31(3) of the FSC Act. *See* Second Administration Order at ¶ 1.

31.    In order to preserve the Debtor's assets and maximize the amounts available to pay its creditors, I have determined to commence proceedings under Chapter 15 and Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

**C.    The Debtor's Chapter 15 Case**

32.    On October 11, 2016, I caused to be filed, *inter alia*, a *Verified Chapter 15 Petition for Recognition of a Foreign Proceeding* in the United States Bankruptcy Court for the Southern District of New York for recognition of the Anguillian proceeding as a "foreign main proceeding," thereby commencing Chapter 15 Case #16-12844 (SMB).

33.    By an *Order Granting Verified Petition for Recognition of Foreign Proceeding under Chapter 15 and Motion in Support of Verified Petition and for Related Relief* (the "Recognition Order"), the Bankruptcy Court recognized (a) the Anguillian proceeding as a "foreign main proceeding" and (b) me as the Debtor's "foreign representative." *See* Recognition Order, Case #16-12844 (SMB), ECF No. 16 at ¶¶ 3-4, p. 3.

34.    The Recognition Order further provides, *inter alia*, that the Administrator is entitled to conduct discovery, examine witnesses, seek and take evidence, and obtain information concerning the Debtor's assets, affairs, rights, obligations, or liabilities pursuant to section 1521(a)(4) of the Bankruptcy Code. *See* Recognition Order at ¶ 5.

- 7 -

35.     Based on the Recognition Order, I believe that I am authorized to file a Chapter 11 petition on behalf of the Debtor. *See* 11 U.S.C. § 1528.

## III.    THE PETITION AND MOTIONS

36.     On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor is managing its affairs as debtor-in-possession. No trustee, examiner, or committee has been appointed in this Chapter 11 case.

37.     Contemporaneously with the filing of the petition, the Debtor is filing the following motions and applications:

(a)     Motion for an Order Extending Time to File Schedules of Assets and Liabilities and Statement of Financial Affairs;

(b)     Application for Order Under 28 U.S.C. § 156(c), 11 U.S.C. § 503(b)(1)(A), and Local Bankruptcy Rule 5075-1 Authorizing the Employment and Retention of Epiq Bankruptcy Solutions, LLC as Claims and Noticing Agent;

(c)     Motion for Protective Order Regarding the Confidential Information of the Debtor's Depositors Pursuant to Sections 105 and 107 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 1007(j) and 9037;

(d)     Motion for an Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals; and

(e)     Motion Pursuant to Federal Rule of Bankruptcy Procedure Authorizing Rule 2004 Examination of Bank of America.

## IV.    ADDITIONAL DISCLOSURES REQUIRED BY LOCAL RULE 1007-2

38.     Pursuant to Local Rule 1007-2 (a)(1), a statement regarding the nature of the Debtor's businesses and the circumstances leading to the filing of their chapter 11 petitions is set forth above.

39.     This case was not originally commenced under chapter 7 or chapter 13 of the Bankruptcy Code; accordingly, I believe that Local Rule 1007-2(a)(2) is inapplicable.

40.     No committee was organized prior to the filing of this chapter 11 case; accordingly, I believe that Local Rule 1007-2(a)(3) is inapplicable.

- 8 -

41.    Local Rule 1007-2(a)(4) provides that a declaration shall disclose list the holders of the Debtor's unsecured claims on consolidated basis, excluding the claims of insiders. The information set forth in Local Rule 1007-2(a)(4) is part of the information that the Debtor requests authority to file under seal. Accordingly, the Debtor has not attached a schedule setting forth such information.

42.    In accordance with Local Rule 1007-2(a)(5), the Debtor has no known secured creditors.

43.    As required by Local Rule 1007-2(a)(6), based on the account of prior management, the *book* value of the Debtor's assets and liabilities (ignoring litigation assets or liabilities) as of the Petition Date, are approximately, in US Dollars, as follows:

    Total Assets: $35 million[1]

    Total Liabilities: $35 million

44.    Pursuant to Local Rule 1007-2(a)(7), the Debtor represents that it has no publicly-traded stock. All of the Debtor's equity is held by CCB.

45.    In response to Local Rule 1007-2(a)(8), the Debtor discloses that the Funds (as defined herein) are in the possession, custody or control of CCB or NCBA. The Debtor believes that such Funds belong to, and are held in trust for, the Debtor.

46.    In my capacity as Administrator, I have commenced legal proceedings in the High Court Anguilla against NCBA for the return of CCIB's money and sought leave of the court in Anguilla to commence an identical proceeding against CCB.

47.    In accordance with Local Rule 1007-2(a)(9), the Debtor leases the following property: 2 St. Mary's Street, The Valley, Anguilla. The Debtor does not own any real property.

---

[1] The total asset value listed above is as reported by prior management to the Administrator as of March 2016. The vast majority of CCIB's assets were funds on deposit with CCB, which is insolvent and in receivership. The Debtor and the Administrator make no representation regarding the market value of the Debtor's assets.

The office of the Administrator is located at FTI Consulting, P.O. Box 993, Palm Grove House, 4th Floor, Wickhams Cay I, Road Town, Tortola, VG1110, British Virgin Islands.

48.    In accordance with Local Rule 1007-2(a)(10), the Debtor discloses the location of the Debtor's substantial assets, the location of its books and records, and the nature, location, and value of any assets held by the Debtor outside the territorial limits of the United States, as follows:

(a)    *Location of Substantial Assets*:   Unearned portion of a $150,000 retainer (New York); Claims against CCB, NCBA, and ECCB relating to any Funds still on deposit with Bank of America in an account in the name of CCB (New York); Other assets (primarily in Anguilla);

(b)    *Location of Books and Records*:  Most of the Debtor's books and records are maintained at the Administrator's offices.  Certain electronic data is stored with a third party provider; and

(c)    *Nature, Location, and Value of Any Assets Outside of U.S.*:  All assets other than unearned portion retainer paid to Reed Smith, certain litigation claims, and funds believed to be on deposit with Bank of America in an account in the name of CCB, are located outside of the United States.

49.    In response to Local Rule 1007-2(a)(11), to the best of my knowledge, information, and belief, there are no actions or proceedings, pending or threatened against the Debtor or its property where a judgment or a seizure of property is imminent.

50.    In response to Local Rule 1007-2(a)(12), as Administrator, I am the authorized management of the Debtor.  As indicated above, the High Court appointed me as the Administrator on February 22, 2016.  I am a Chartered Accountant and a Consultant with FTI

Consulting (BVI) Limited based in Tortola, British Virgin Islands in its Caribbean Corporate Restructuring and Finance Department. I have over 35 years of experience in restructuring and insolvency, including approximately 12 years in the Caribbean area. Previously, I was an Insolvency and Restructuring Partner at Ernst & Young LLP in the United Kingdom until September 2004, then Managing Partner of Zolfo Cooper (BVI) Limited from 2004 until 2012 and relocated back to England in July 2012. I have held appointments as liquidator of many companies in the British Virgin Islands and throughout the Caribbean, including several other cases in Anguilla. I also have significant experience in cross-border insolvency matters involving parties in the U.S., U.K., France, Switzerland, Russia, the Commonwealth of Independent States, Hong Kong, People's Republic of China, and Singapore. Until recently, I was a liquidator of two of the largest British Virgin Islands registered feeder funds into Bernard L. Madoff Investment Securities LLC.

51.     As the Debtor is not an operating entity, I understand that the additional disclosures required by Local Rule 1007-2(b) do not apply.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: November 21, 2016

By: _____
       William Tacon, Foreign Representative

- 11 -

# EXHIBIT A

REGISTRAR'S
OFFICE
FEB 22 2016
22/2/16
ANGUILLA

IN THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
ANGUILLA CIRCUIT
(CIVIL)
A.D. 2016

CLAIM NO. AXA/HCV 2016/0005

In the Matter of Protection Orders

AND

In the Matter of the Financial Services Commission Act, R.S.A. c. F28

AND

In the Matter of National Bank of Anguilla (Private Banking & Trust) Ltd

AND

In the Matter of Caribbean Commercial Investment Bank Ltd

BETWEEN:

FINANCIAL SERVICES COMMISSION

Applicant

AND

NATIONAL BANK OF ANGUILLA (PRIVATE BANKING & TRUST) LTD
CARIBBEAN COMMERCIAL INVESTMENT BANK LTD

Respondents

ORDER

For the appointments of an Administrator to the Respondents

EUSTELLA P. FONTAINE
NOTARY PUBLIC
THE VALLEY, ANGUILLA B.W.I
CERTIFIED TRUE COPY

NOTARY PUBLIC
COMMISSION DOES NOT EXPIRE

IN OPEN COURT BEFORE: Her Ladyship the Honourable Madame Justice Cheryl Mathurin

MADE ON: 22nd day of February 2016

ENTERED ON: 22nd day of February 2016

APPEARANCES: Ms. Eustella Fontaine and Ms. Keisha Hiles of Fontaine & Associates for the Applicant;

UPON READING the Notice Application and Fixed Date Claim Form filed on behalf of the Applicant on the 21st day of January, 2016 and the Affidavit in Support filed on the 21st day of January, 2016 and Supplemental Affidavit of the Applicant filed on 27th day of January 2016;

AND UPON the Respondents and the Eastern Caribbean Central Bank having been served in this matter with the Fixed Date Claim Form, Notice of Application and Affidavits in Support;

AND UPON the determination of the Fixed Date Claim Form which requested the same relief as the Notice of Application;

IT IS HEREBY ORDERED as follows:

1. National Bank of Anguilla (Private Banking & Trust) Ltd and Caribbean Commercial Investment Bank Ltd operations in Anguilla ("the Offshore Banks") are herewith placed under administration pursuant to section 31(2)(b) of the Financial Services Commission Act, R.S.A. c. F28 ("FSC Act").

2. Mr. William Tacon of FTI Consulting, Road Town, Tortola, British Virgin Islands is hereby appointed as Administrator of the Offshore Banks (hereinafter "the Administrator").

3. The Offshore Banks shall forthwith vest exclusively in the control of the Administrator and the Administrator shall have complete control of the management of the Offshore Banks pursuant to section 31(2)(b) of the FSC Act.

4. The Administrator shall conduct the management of the Offshore Banks with the greatest economy compatible with efficiency, including the right to subcontract the management of the day to day operations of the Offshore Banks to the Conservator appointed by the Eastern Caribbean Central Bank ("ECCB"), should the Administrator consider that to be expedient.

5    The Administrator shall provide an interim report or reports to this
     Honourable Court and the Applicant on the operations of each
     Bank within twenty eight (28) days hereof detailing the following i) a
     review of the current financial position and financial performance of
     the Offshore Banks, with reference to the Offshore Banks' available
     financial returns, management accounts and the ECCB's stated
     position, ii) consideration of appropriate accounting treatments,
     other than those proposed by the ECCB, for the Offshore Banks'
     financial relationship with their parent companies, iii) a
     determination of the impact on the Offshore Banks and their
     depositors of the current rescue plan proposed by the ECCB, iv)
     considering the solvency and viability of the Offshore Banks with
     reference to i) to iii) and the extent the Offshore Banks' assets are
     or were held by their parent companies and further as soon as
     possible after his appointment and in any event within sixty (60)
     days thereof the Administrator shall file with the Court, pursuant to
     section 31(4) of the FSC Act, a Report stating which of the following
     courses is in the circumstances, in his opinion most advantageous
     to the general interests of the customers, clients, depositors and
     creditors, of each Offshore Bank as he considers appropriate,
     including

     a. the transfer or sale of the businesses of the Offshore Banks to
        some other company in pursuance of a scheme or other
        arrangement to be prepared as the Court or any law may provide;

     b. the continuation of their businesses by the Offshore Banks, or

     c. the winding up of the Offshore Banks or of any part of the business
        of the Offshore Banks.

6    The Administrator shall, in accordance with section 31(4) of the
     FSC Act furnish copies of the said Reports to the Applicant upon
     filing the same with the Court

7    For the purposes of preparing the above-stated Report, the
     Administrator shall conduct an assessment of the operations of
     each Offshore Bank to determine the following:

     a. The extent of the Offshore Banks' liabilities,

     b. The current financial performance of the Offshore Banks and their
        ability to meet their obligations as they fall due;

     c. The identity value and location of all of the Offshore Banks' assets,
        including any claims they may have against third parties;

    d  Whether there is a need to trace and recover assets that belong or ought to belong to the Offshore Bank including assets located in or outside of Anguilla.

    e  Whether it is possible for the Offshore Banks' business to continue as a going concern

8    The Administrator shall have the authority as an officer of this Honourable Court to act in Anguilla or any foreign jurisdiction where he believes assets and property of the Offshore Banks may be situate and shall have the right to in his own name and/or in the name of the Offshore Banks. as appropriate. commence, continue. discontinue or defend without further Order of this Honorable Court any proceeding or action locally or in a foreign jurisdiction for the purpose of fulfilling his duties and obligations under this Order, the FSC Act and the Trust Companies and Offshore Banking Act, R.S.A. c. T60 and to seek the assistance of any Court of a foreign jurisdiction in the carrying out of the provisions of this Order or any subsequent order in this proceeding. including without limitation, an order of examination of persons believed to be knowledgeable of the affairs. assets and property of the Offshore Banks and to assist the Administrator in the recovery of the assets and property of the Offshore Banks.

9    The Administrator shall incur no personal liability in respect of actions arising from his appointment as Administrator of the Offshore Banks

10.    The Administrator, his employees, legal Counsel, agents, and such other persons retained by him in the performance of his duties hereunder shall be granted indemnity from the assets of the Offshore Banks for his fees, expenses and actions taken, including indemnity for any litigation or other claims, actions or demands whatsoever in respect of any debts, costs, claims, liabilities, acts, matters, or things done or due to be done or omitted by the Administrator, his employees. legal counsel, agents, and such other persons retained by him except where there is a finding by the Court of gross negligence in the performance of his and or of their respective duties

11    The Administrator shall be entitled to draw his fees and disbursements from the Offshore Banks' assets. The Administrator is entitled to draw his disbursements as they are incurred and shall be entitled to draw 75% of the remuneration incurred on a monthly basis.    The Administrator's fees. costs and expenses, and the

costs of any third party professionals engaged by the Administrator, shall be an expense of each Offshore Bank and shall at all times be subject to approval by this Honourable Court.

12. All actions and the execution of all writs, summonses and other processes against the Offshore Banks are hereby stayed upon the application herein for administration and shall not be proceeded with, without the prior leave of the Court herein

13. The Administrator in discharging his obligations shall be empowered to perform all functions of management including but not limited to the following powers

a) to exercise the powers of a licensee pursuant to section 31(3) of the FSC Act;

b) to ascertain the assets of the Offshore Banks and their location and take all steps necessary including Court actions where appropriate to obtain possession of such assets, including, without prejudice to the generality of the foregoing, receivables, and to bring the same under his control and further, where appropriate, bring the same into the jurisdiction of this Honourable Court and, for this purpose, to seek the assistance of the Courts of the various jurisdictions in which assets of the Offshore Banks are located;

c) to sell, charge or otherwise dispose of the assets of the Offshore Banks,

d) to borrow money, whether on the security of the assets of the Offshore Banks, or otherwise,

e) to incur and pay for all reasonable expenses and disbursements in connection with the running, administration and management of the Offshore Banks' records and affairs and offices;

f) if appropriate, in the discretion of the Administrator, to retain or employ such further professionals or other individuals, partnerships, associations or companies, to assist in running the affairs and business of the Offshore Banks and for the purposes of ascertaining and quantifying the assets, records and liabilities of the Offshore Banks, such employment being either in this jurisdiction or in any other jurisdiction of the world where the Offshore Banks have conducted business or entered into contracts with third parties.

g) to render invoices for his own remuneration at the usual and customary hourly rates more particularly stated in the Schedule attached hereto:

h) to take all actions necessary to see, review, secure, take possession of any books, papers, writings, documents and records relating to the Offshore Banks that are located in the offices of its auditors or any other person both in this jurisdiction and in any other jurisdiction and to bring the same under his control and further, where appropriate, bring the same into the jurisdiction of this Honourable Court and, for this purpose, to seek the assistance of the Courts of the various jurisdictions in which assets of Offshore Banks are located;

i) to take all actions necessary to see, review, secure, take possession of the claims and financial records of the Offshore Banks that are located in the offices of Offshore Banks or any company affiliated with Offshore Banks, with the Conservator appointed by the Eastern Caribbean Central Bank or any other person and to bring the same under his control and further, where appropriate, bring the same into the jurisdiction of this Honourable Court and, for this purpose, to seek the assistance of the Courts of the various jurisdictions in which assets of Offshore Banks are located;

j) to open, operate and maintain bank accounts in the name of the Administrator or the Offshore Banks as may be necessary;

k) to do all such things as may be necessary or expedient for the protection of the Offshore Banks' property or assets;

l) to discharge rent, salaries of any employees of the Offshore Banks and other current expenses of the Offshore Banks,

m) to grant or accept surrender of a lease or tenancy of any of the property of the Offshore Banks and in the case of freehold or leasehold property to sell such assets as the Administrator considers expedient;

n) to terminate, complete or perfect any contracts, including the employment of employees, or transactions relating to the business of the Offshore Banks;

o) to effect and maintain insurance in connection with the management and maintenance of the business, property and assets of the Offshore Banks;

p)      to do all acts and to execute in the name and on behalf of the
        Offshore Banks all deeds receipts or other documents;

q)      to use the Offshore Banks' seals.

r)      to do all such things reasonably and properly incidental to the
        management of the Offshore Banks and to the exercise of the
        foregoing powers.

14.     The Administrator may in his own name and/or in the name of the
        Offshore Banks commence, continue, discontinue or defend without
        further Order of this Honourable Court any action or other legal
        proceedings which relate to the said property belonging to the
        Offshore Banks and which it is necessary to bring or defend for the
        purpose of effectually discharging his role as Administrator.

15.     The Administrator shall have the power to cause the Offshore
        Banks to rank and claim in the bankruptcy, liquidation, insolvency,
        sequestration or any other process of any person indebted to the
        Offshore Banks and to receive dividends.

16.     The Administrator pursuant to section 31(5) of the FSC Act in
        carrying out his duties and responsibilities may apply for directions
        from this Honourable Court from time to time, including any
        application as may be required for the amendment of this Order.

17.     The Administrator shall perform such other duties and carry out
        such other directives as the Court may from time to time order.

18.     The costs of this application are to be paid out of the assets of the
        Respondents in priority to all other liabilities.

19.     The Applicant shall serve this Order on the Respondents and the
        ECCB as soon as practicable but not later than seven (7) days from
        the date hereof.

20.     The Respondents or anyone served with or notified of this order
        may apply to the Court at any time to vary or discharge this order
        (or so much of it as affects that person), upon giving notice to the
        Applicant's attorneys of the intention to apply to the Court; and
        must as soon as is practicable, in advance of the hearing supply
        the Applicant's attorneys with copies of any evidence upon which it
        intends to rely, or with a written statement of the substance of that
        evidence.

21    Anyone required to be notified of this Order will be given a copy of it
      by the Applicant s attorneys

**BY THE COURT**



**R E G I S T R A R**

### PENAL NOTICE

If you THE RESPONDENTS disobey this order you may be held to be in
contempt of court and may be imprisoned fined or have your assets
seized

Any other person who knows of this order and does anything which helps
or permits the Respondents or any of them to breach the terms of this
order may also be held to be in contempt of Court and may be imprisoned,
fined or have their assets seized

### INTERPRETATION OF THIS ORDER

A Respondent who is an individual who is ordered not to do something
must not do so by himself or in any other way.  He must not do it through
others acting on his behalf or on his instructions or with his
encouragement

A Respondent which is not an individual which is ordered not to do
something must not do so by its directors officers, partners, employees or
agents or in any other way

Except as provided below. the terms of this order do not affect or concern
anyone outside the jurisdiction of this Court.

However the terms of this order will affect the following persons in a
country or state outside the jurisdiction of this Court -
        - the Respondents or their agents appointed by power of attorney:
        - any person who -
            (i)     is subject to the jurisdiction of this Court;
            (ii)    has been given written notice of this order at his
                    residence or place of business within the jurisdiction
                    of this Court; and
            (iii)   is able to prevent acts or omissions outside the
                    jurisdiction of this Court which constitute or assist in a
                    breach of the terms of this order;

**CERTIFIED TRUE COPY**

**EUSTELLA P. FONTAINE**
**NOTARY PUBLIC**
**THE VALLEY, ANGUILLA B.W.I**

**NOTARY PUBLIC**
**COMMISSION DOES NOT EXPIRE**

- any other person. only to the extent that this Order is declared
  enforceable by or is enforced by a Court in that country or state.

All communications to the Court about this order should be sent to the
Court Registry quoting the case number   The telephone number is 264-
497-2377   The offices are open between 8.30 a.m. to 12.00 p.m. and 1.00
p.m. to 3.30 p.m. Monday to Friday

The Applicant's address for service is **Fontaine & Associates of Hansa
Bank Building, The Valley, Anguilla on behalf of the Applicant's;
telephone:   +1-264-497-1404;   fax:   +-1-264-497-1044;   e-mail:
fontainelaw@fontainelawfirm.com**

## Schedule

| Role | Rate per hour US$ |
|---|---|
| Administrator | 475 |
| Director | 370 |
| Senior Manger | 325 |
| Manager | 290 |
| Assistant Manager | 220 |
| Case Administrator | 110 |

# EXHIBIT B

REGIS...
OFFICE...
MAY 19 2016

ANGUILLA

IN THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
ANGUILLA CIRCUIT
(CIVIL)
A.D. 2016

CLAIM NO. AXA/HCV 2016/0005

In the Matter of Protection Orders

AND

In the Matter of the Financial Services Commission Act, R.S.A. c. F28

AND

In the Matter of National Bank of Anguilla (Private Banking & Trust) Ltd

AND

In the Matter of Caribbean Commercial Investment Bank Ltd

BETWEEN:

FINANCIAL SERVICES COMMISSION

Applicant

AND

NATIONAL BANK OF ANGUILLA (PRIVATE BANKING & TRUST) LTD
CARIBBEAN COMMERCIAL INVESTMENT BANK LTD

Respondents

ORDER

IN CHAMBERS BEFORE: Her Ladyship the Honourable Madame Justice Cheryl Mathurin

MADE ON: 5th day of May 2016

ENTERED ON   19 day of May 2016

APPEARANCES: Ms Eustella Fontaine and Ms Keisha Hiles of Fontaine & Associates for the Applicant and Administrator.

UPON READING the Joint Notice of Application and the Affidavits in Support of the Applicant and the Administrator filed on the 25th day of April, 2016

AND UPON the National Bank of Anguilla Limited and Caribbean Commercial Bank (Anguilla) Limited having been served in this matter with Notice of Application and Affidavits in Support and Mr Gerald Halischuk being present for the Applicant and the Administrator being excused from attending in person.

IT IS HEREBY ORDERED as follows:

1   The powers of the Administrator pursuant to the Order of 22nd February 2016 herein are varied to include the powers of a Liquidator under the Companies Act as provided for in section 31(3) of the Financial Services Commission Act. The Administrator's powers of Liquidator under section 222 of the Companies Act are as follows.

   a. retain attorneys-at-law, accountants, engineers, appraisers and other professional advisers;
   b. bring, defend or take part in any civil, criminal or administrative action or proceeding in the name and on behalf of the company;
   c. carry on the business of the company as required for an orderly liquidation,
   d. sell by public auction or private sale any property of the company;
   e. do all acts and execute any documents in the name and on behalf of the company
   f. borrow money on the security of the property of the company;
   g. settle or compromise any claims by or against the company;
   h. make financial provision in respect of the custody of the documents and records of the company after its dissolution; and
   i. do all other things necessary for the liquidation of the company and the distribution of its property
   j. apply to the Court for an order requiring a person to appear before the Court at the time and place designated in the order, and to be examined

2   That the continued fees of the Administrator and his agents are to be paid out by the Administrator on a monthly basis out of the assets of the Respondents

3    The Administrator Report on his progress to this Honourable Court within 90 days of the Order herein

4    The Administrator shall perform such other duties and carry out such other directives as the Court may from time to time Order

5    Liberty to apply

6    Costs to be borne by the 1st Respondent and 2nd Respondent

BY THE COURT

REGISTRAR

EUSTELLA P. FONTAINE
NOTARY PUBLIC
THE VALLEY, ANGUILLA B.W.I

CERTIFIED TRUE COPY

NOTARY PUBLIC
COMMISSION DOES NOT EXPIRE





IN THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
ANGUILLA CIRCUIT
(CIVIL)
A.D. 2016

CLAIM NO. AXA/HCV 2016/0005

In the Matter of Protection Orders

AND

In the Matter of the Financial
Services Commission Act, R.S.A.
c. F28

AND

In the Matter of National Bank of
Anguilla (Private Banking & Trust)
Ltd

AND

In the Matter of Caribbean
Commercial Investment Bank Ltd

BETWEEN:

FINANCIAL SERVICES COMMISSION

**Applicant**

AND

NATIONAL BANK OF ANGUILLA (PRIVATE BANKING & TRUST) LTD
CARIBBEAN COMMERCIAL INVESTMENT BANK LTD

**Respondents**


## O R D E R


Filed by Fontaine & Associates
Solicitors for the Applicant and Administrator