Weinberg Zareh & Geyerhahn, LLP
Omid Zareh
Seth B. Weinberg
45 Rockefeller Plaza, 20th Floor
New York, New York 10111
(212) 899-5470
Omid@WZGLLP.com
Seth@WZGLLP.com

*Proposed Counsel for the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Caribbean Commercial Investment Bank Ltd., | Case No.:  16-13311 (SMB) |
| Debtor. | |

**MOTION FOR AN ORDER PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 AUTHORIZING DEBTOR AND DEBTOR IN POSSESSION TO OBTAIN DISCOVERY FROM BANK OF AMERICA**

1.     Weinberg Zareh & Geyerhahn, LLP, on behalf of their client, the Caribbean Commercial Investment Bank Ltd. (hereinafter, the "Debtor" or "CCIB"), as debtor and debtor in possession, hereby respectfully moves this Court (the "Motion") for entry of an Order, pursuant to Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004") authorizing the Debtor to examine Bank of America, N.A., and its affiliates, ("BOA").  In support of the Motion, the Debtor, by and through its undersigned proposed counsel, respectfully represents the following:

**Preliminary Statement**

1.     At all relevant times herein, BOA has served as a depository bank for Debtor. Debtor herein seeks information from BOA about the Funds (defined hereinafter) which are believed to have been transferred to BOA and, some of which may still remain at BOA.

2.      Upon information and belief, BOA has extensive records and other evidence[1] of

its role serving in this capacity, and would be able to shed a great deal of clarity as to the

transfers of the Funds of the Debtor, as more fully described herein.

3.      The Debtor has sought this information from multiple other sources, but been

unable to so procure this essential, and much sought-after, information.

4.      For example, the Eastern Caribbean Central Bank (the "ECCB") has been entirely

uncooperative and unforthcoming in disclosures to Debtor about the significant funds which

were procured or transferred from the Debtor, without receiving anything of value in return.

5.      Debtor's instant Motion simply seeks to obtain this information from BOA, the

entity Debtor believes acted as the conduit and depository of these Funds.

## Jurisdiction and Venue

6.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b)(2)

and 1334.

7.      This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

8.      Venue of this case and the Motion is proper in this district pursuant to 28 U.S.C.

§§ 1408 and 1409.

9.      The predicates for the relief sought herein are sections 105(a) of the Bankruptcy

Code and Rule 2004.

---

[1] The proposed undersigned counsel has sought, and successfully received, similar information from BOA in the similar Chapter 11 case of In re: National Bank of Anguilla (Private Banking & Trust) Ltd., Case No. 16-11806 (MG) (Bankr. S.D.N.Y. June 28, 2016) [ECF No. 22].

## Background

### A.    The Debtor's Business and the Chapter 11 Case

10.    The Debtor is a commercial bank, incorporated and licensed in Anguilla.

11.    The Debtor's headquarters are located at 2 St. Mary's Street, The Valley, Anguilla.

12.    Caribbean Commercial Bank (Anguilla) Ltd. ("CCB") is Debtor's sole shareholder.

13.    CCB is incorporated pursuant to the laws of Anguilla.

14.    CCIB does not have any employees. When input is required, it is provided by employees of National Commercial Bank of Anguilla Ltd ("NCBA"), the successor to CCB (as discussed below).

15.    Upon information and belief, notwithstanding the insolvency of CCB during the Relevant Period, the Conservator Directors (acting on behalf of CCIB) procured or permitted the payment to CCB of (i) all monies received by CCIB from depositors denominated in U.S. Dollars and (ii) the proceeds of all assets of CCIB realized or collected during the Relevant Period, also denominated in U.S. Dollars (together, the "Funds").

16.    Upon information and belief, the Funds were deposited into one or more bank accounts in the United States at BOA and that a portion of such Funds may still remain in such accounts.

### B.    Administrator and Liquidator of CCIB

17.    CCIB was regulated by the Financial Services Commission in Anguilla ("FSC").

18.    In light of developments with the conservatorship of CCB (discussed below), the FSC found it was no longer appropriate to maintain the *status quo*, and determined that the appointment of an independent representative would best protect the rights of CCIB and its

creditors.

19.    Subsequently, upon the application of the FSC and by an Order dated February 22, 2016 (the "First Administration Order"),[2] the Eastern Caribbean Supreme Court in the High Court of Justice Anguilla Circuit (the "High Court") placed the operations of CCIB and another offshore bank, the National Bank of Anguilla (Private Banking & Trust) Ltd. ("PBT" and together with CCIB, the "Offshore Banks") under administration pursuant to section 31(2)(b) of the Financial Services Commission Act (with respect to CCIB, the "Anguillian Proceeding").

20.    By the First Administration Order, the High Court appointed Mr. William Tacon as the Administrator of the Offshore Banks (the "Administrator").    See First Administration Order at ¶ 2.

21.    As the court-appointed Administrator of CCIB, Mr. Tacon has complete control of the management of CCIB pursuant to section 31(2)(b) of the Financial Services Commission Act, R.S.A. c. F28 (the "FSC Act").    See First Administration Order at ¶ 3.

22.    The High Court specifically authorized Mr. Tacon, as an officer of the High Court, "to act in Anguilla or any foreign jurisdiction where he believes assets and property of the Offshore Banks may be Situate . . . [to] commence [or] continue . . . without further Order of this Honorable Court any proceeding or action . . . in a foreign jurisdiction for the purpose of fulfilling his duties and obligations under this Order." See First Administration Order at ¶ 8.

23.    The High Court further authorized Mr. Tacon "to seek the assistance of any Court of a foreign jurisdiction in the carrying out of the provisions of this Order . . ., including without limitation, an order of examination of persons believed to be knowledgeable of the affairs, assets and property of the Offshore Banks and to assist the Administrator in the recovery of the assets

---

[2] A true and correct copy of the First Administration Order is attached as Exhibit A the Declaration of William Tacon Pursuant to Local Rule 1007-2 ("Tacon Declaration")..

and property of the Offshore Banks." *See* First Administration Order at ¶ 8.

24.     The First Administration Order also authorized him, as Administrator, to "sell, charge or otherwise dispose of the assets of the Offshore Banks." *See* First Administration Order at ¶ 13(c).

25.     The First Administration Order requires him to report to the High Court regarding the winding up of the Offshore Banks or of any part of the business of the Offshore Banks. *See* First Administration Order at ¶ 5(c).

26.     In addition, the High Court entered an Order dated May 19, 2016 (the "Second Administration Order").[3] The Second Administration Order expressly conferred upon him the powers of a liquidator under the Companies Act, as permitted by section 31(3) of the FSC Act. *See* Second Administration Order at ¶ 1.

27.     Upon information and belief, there are no significant or material creditors of CCIB other than its depositors.

### C.     Net Transfer of Approximately $5.9 Million from Debtor to CCB

28.     Between August 12, 2013, and April 22, 2016, the affairs of CCB were subject to the control of the Eastern Caribbean Central Bank (the "ECCB"), which was the regulator of CCB, through a process of conservatorship pursuant to powers conferred on the ECCB by the Eastern Caribbean Central Bank Agreement Act.

29.     On April 22, 2016, the ECCB appointed a receiver to CCB.  At 4:00 p.m. on April 22, 2016, CCB ceased banking operations in Anguilla.

30.     According to a press release issued by the ECCB, CCB's banking operations were transferred on April 22, 2016, to a newly established bank, NCBA, which apparently is wholly-

---

[3]A true and correct copy of the Second Administration Order is attached as Exhibit B to the Tacon Declaration.

owned by the Government of Anguilla.

31.     Between August 12, 2013 and March 24, 2016 (the "Relevant Period"), Debtor's affairs were conducted in accordance with instructions given by, and under the management control of, individuals appointed by the ECCB as conservators of CCB.

32.     Those individuals were Messrs. Martin Dinning, Hudson Carr, and Shawn Williams (collectively, the "Conservator Directors").   All of the Conservator Directors were based in Anguilla during their periods of office, although they were not residents or citizens of Anguilla.   All Conservator Directors appear to have operated under the close control or supervision of the ECCB.

33.     On or about August 15, 2013, the ECCB or Mr. Dinning, as Conservator Director acting on behalf of CCB, dismissed the appointed directors of CCIB.

34.     From August 15, 2013, until February 22, 2016, CCIB had no *de jure* directors and therefore acted solely in accordance with the instructions of, and under the management control of, the Conservator Directors acting from time to time.

35.     From February 22, 2016, until March 24, 2016, in accordance with the terms of my appointment as Administrator, the management of the day-to-day operations of CCIB was subcontracted to CCB (by and through Mr. Williams, as Conservator Director of CCB).

36.     Throughout the Relevant Period, upon information and belief, Debtor was insolvent on a balance sheet test.   It appears that Debtor also may have been unable to pay its debts as they fell due, at least during the latter part of the Relevant Period and thereafter.

37.     Upon information and belief, CCB also was illiquid, dependent upon Debtor for its liquidity (at least in part), and unable to settle the large amount CCB owed to Debtor.

38.     Upon information and belief, CCB was insolvent, at least during the latter part of

the Relevant Period.

39.    Significantly, it is the information regarding these accounts which is sought herein.

40.    At the close of business on April 25, 2016, at Mr. Tacon's direction, CCIB ceased accepting new deposits as he determined that trading should cease immediately.

41.    Between the time of Mr. Tacon's appointment as Administrator and the date CCIB was instructed to cease accepting deposits, CCIB was accepting deposits.

42.    The gross amount of the Funds paid to or collected by CCB during the Relevant Period was US$26,983,662.05.

43.    After returned funds, a net amount of **US$5,927,991.11** remained owing to CCIB.

44.    None of CCB, NCBA, the ECCB, nor the Conservator Directors, to whom Mr. Tacon reached out for information and explanations relating to the transfer of the Funds to CCB (while it was insolvent), has been forthcoming with answers.

45.    In addition, despite repeated requests, there is simply no indication that CCB will repay any of the net Funds outstanding.

46.    Mr. Tacon's inquiries indicate that no provision has been made for CCB to make repayment and CCB is in receivership and clearly recognized as being insolvent.

47.    Based on these investigations, including discussions with representatives of CCB and NCBA, it is believed that all of the Funds were received into one or more bank accounts at BOA, and there is a strong possibility that some money will still be held in those accounts.

48.    Upon further information and belief, such Funds are held in constructive trust for CCIB's benefit because CCIB did not receive reasonably equivalent value in exchange for the transfer of the Funds and CCIB was insolvent (or was rendered insolvent) by the transfer of the

Funds to CCB.

49.    Debtor simply seeks discovery from BOA in its capacity as a depository bank pertaining to the Funds.

**D.    Discovery from BOA is Essential as it Has Not Been Forthcoming from Other Sources, Despite Multiple Requests**

50.    Upon information and belief, ***the Funds were deposited into an account at BOA*** in New York City, and a portion of such Funds may still remain in the account.

51.    BOA was the conduit through which the Funds were removed from Debtor, upon information and belief.

52.    BOA, therefore, was an integral part of the depletion of Debtor's Funds, upon information and belief.

53.    As such, ***BOA is uniquely suited*** to provide vital, relevant discovery.

54.    Despite multiple requests, none of CCB, NCBA, ECCB, or the Conservator Directors have provided the Administrator with an adequate explanation relating to the transfer of the Funds from Debtor (while it was insolvent).

55.    In addition, despite repeated requests, the Administrator has received no indication that CCB will repay any of the Funds, no apparent provision has been made for CCB to repay the Funds, and Debtor is insolvent and in receivership.

56.    Based on his investigations, including discussions with representatives of CCB and NCBA, the Administrator believes that the Debtor did not receive reasonably equivalent value in exchange for the transfer of the Funds, and the Debtor was insolvent (or was rendered insolvent) by the transfer of the Funds to CCB.

**The Rule 2004 Examination Requested Is Essential**

57.    The Debtor respectfully requests that the Court enter an Order, substantially in the

form annexed hereto as <u>Exhibit "A"</u>, authorizing it to elicit document discovery from BOA and to conduct an oral examination of BOA with respect to the subject matter of the document requests.

58.    Pursuant to Rule 2004, the Debtor proposes to serve BOA with a subpoena and accompanying document requests substantially in the form of <u>Exhibit "B"</u>[4] hereto (the "<u>Document Requests</u>") and requests authorization to issue said subpoena, and any necessary related process, to BOA.

59.    The Document Requests seek to obtain documents from BOA relating to the Funds transferred to CCB and the value that the Debtor received in exchange therefor, if any, and oral examinations of BOA, if any, would be related to the subject matter of the document requests.

### Legal Basis For Relief

60.    Rule 2004(a) states that on "motion of any party in interest, the court may order the examination of any entity."[5]

61.    The examination may be compelled by the issuance of a subpoena, as provided by Bankruptcy Rule 9016.[6]    "[R]equests for a 2004 examination are usually considered ex parte." *In re J & R Trucking, Inc.*, 431 *B.R.* 818, 820 (Bankr. N.D. Ind. 2010).  The granting of a motion under Ru*le 2004 is within the discr*etion of the Court.  *See In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) ("As the permissive language of the rule *suggests, the Court h*as the

---

[4] The draft Document Requests attached hereto as <u>Exhibit B</u> are intended as exemplars.  They are subject to modification and are not intended to preclude such other discovery as may be appropriate for the purposes set forth in this Rule 2004 Motion.  The Debtor expressly reserves all of its rights with respect to the scope of discovery sought herein.

[5] Fed. R. Bankr. P. 2004(a).

[6] Fed. R. Bankr. P. 2004(c).

discretion to grant a request for a 2004 examination . . .") (citations omitted).

62.　"The purpose of a Rule 2004 examination is to assist a party in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions, and assessing whether wrongdoing has occurred." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004).

63.　The scope of an examination sought under Rule 2004 may relate to "the acts, conduct, or property or to the liabilities and financial condition of the debtor."[7]   Rule 2004 is "debtor-centric and allows considerable leeway for all manner of so-called fishing expeditions provided that there is a reasonable nexus to the debtor and the administration of the debtor's case". *In re Hilsen*, 2008 WL 2945996, at *1.

64.　Rule 2004 requires a court to "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *In re Drexel Burnham Lambert Group*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991).  Thus, a "party in interest may use Rule 2004 to . . . ascertain whether wrongdoing has occurred", *In re Hilsen*, 2008 WL 2945996, *4 (Bankr. S.D.N.Y., July 25, 2008) (citations omitted), or whether avoidable transfers were made, *see In re Brooke Corp.,* No. 08-22786, 2013 WL 3948866, at *2 (Bankr. D. Kan. July 29, 2013) ("[T]he Trustee seeks the records defined in the motion for an order allowing a Rule 2004 records examination from VGM and VGM Group for the purpose of determining whether to pursue DB and VGM as parties liable for allegedly avoidable transfers. The purpose clearly affects the administration of the estate and is within the scope of examination allowed under Rule 2004.").

65.　Here, an examination of BOA is particularly appropriate because of its integral

---

[7] Fed. R. Bankr. P. 2004(b).

role in the depletion of the Funds, and because none of the relevant parties has provided meaningful responses to the Administrator regarding the transfer of the Debtor's Funds and CCB's means of repaying the Funds to the Debtor.  Thus, the proposed examination will provide the Debtor with important information regarding the amount and location of the Funds, the purpose for which any of the Funds have been used, and the potential that the Debtor will be able to recover some or all of the Funds.

## Notice

66.    The Debtor will provide notice of this Motion to the Office of the United States Trustee.  The Debtor submits that no other or further notice need be provided.

## No Prior Request

67.    No prior motion for the relief requested herein has been made to this Court or any other court.

**WHEREFORE**, the Debtor respectfully requests this Court enter an Order, substantially in the form annexed as Exhibit A, granting the relief requested in this Motion and such further relief as is appropriate.

Dated: November 22, 2016        Respectfully submitted,
       New York, New York

                                    Weinberg Zareh & Geyerhahn, LLP
                                    /s/ Omid Zareh_____
                                    Omid Zareh
                                    Seth B. Weinberg
                                    45 Rockefeller Plaza, 20th Floor
                                    New York, New York 10111
                                    (212) 899-5470
                                    Email: Omid@WZGLLP.com
                                                    Seth@WZGLLP.com

*Proposed Conflicts Counsel for the Debtor and Debtor in Possession*

**EXHIBIT A**
**(Proposed Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Caribbean Commercial Investment Bank Ltd., | Case No.:  16-13311 (SMB) |
| Debtor. | |

**[PROPOSED] ORDER GRANTING MOTION OF DEBTOR AND DEBTOR**
**IN POSSESSION FOR AN ORDER PURSUANT TO FEDERAL**
**RULE OF BANKRUPTCY PROCEDURE 2004 AUTHORIZING**
**EXAMINATION OF BANK OF AMERICA**

Upon consideration of the Debtor's Motion (the "Motion")[1] for an Order, pursuant to Federal Rule of Bankruptcy Procedure 2004, authorizing and directing the production of documents by Bank of America (the "BOA"), the Court finds that:

(i) it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.), as amended by the Standing Order dated January 31, 2012 (Preska, C.J.);

(ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2);

(iii) venue of this case and the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409;

(iv) notice of the Motion was sufficient under the circumstances; and

(v) upon the record herein and after due deliberation, good and sufficient cause exists for the relief requested herein.

---

[1] Capitalized terms used but not defined in this Order shall have the meanings ascribed to such terms in the Motion.

Accordingly, it is hereby: **ORDERED that:**

1. The Motion is granted;

2. The Debtor is authorized to serve a subpoena, document requests, and other necessary related process upon BOA to obtain the documents within the scope of the Document Requests attached as Exhibit B to the Motion and BOA is directed to produce responsive documents within twenty (20) calendar days of service, in accordance with Rule 2004 and this Order.

3. The Debtor is further authorized to serve, in due course, pursuant to Rule 2004, without further Order of the Court, such additional discovery requests upon any person as the Debtor may deem appropriate for the purposes of effectively evaluating and analyzing the subject matters addressed in or related to the Discovery Requests, subject, however, to the right of persons receiving such requests to raise objections and be heard with respect to the resolution of the same;

4. The Debtor is authorized to conduct an oral examination of BOA with respect to the subject matter of the document requests, the documents produced or withheld by BOA, the Funds, Caribbean Commercial Bank (Anguilla) Ltd. ("CCB"), receipt or use of the Funds, the value provided to the Debtor in exchange for the Funds, or any other transfers or transactions between the Debtor and CCB, or any related party;

5. The Court retains jurisdiction to resolve any disputes arising under or related to this Order, including any discovery disputes that may arise between or among the parties, and to interpret, implement, and enforce the provisions of this Order;

6.     This Order is without prejudice to the rights of the Debtor to apply for further

discovery of BOA, or of any other entity or individual; and

7.     This Order shall be immediately effective and enforceable upon its entry.


Dated:    _____, 2016                    _____
          New York, New York                      UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**
**(Documents to Be Produced)**

## DOCUMENTS TO BE PRODUCED
## BY BANK OF AMERICA

### Definitions

1.     "Bank of America" shall mean Bank of America, N.A., and its affiliates.

2.     "Communication" refers to the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

3.     "Concerning" means relating to, referring to, describing, evidencing or constituting.

4.     "Conservator Directors" shall mean Messrs. Martin Dinning, Hudson Carr, and Shawn Williams, and each of their agents, and employees.

5.     "Debtor" shall mean Caribbean Commercial Investment Bank Ltd., its agents and employees.

6.     "CCB" shall mean Caribbean Commercial Bank (Anguilla) Ltd. Including, without limitation, its parent companies, subsidiary companies, predecessors, management, successors, affiliates, member firms, network members, agents, and employees.

7.     "Document(s)" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a)(1)(A).  A draft or non-identical copy or a copy of the same document from another source is a separate document within the meaning of this term.   In addition, for the avoidance of doubt a written "Communication" is a "Document."

8.     "ECCB" shall mean Eastern Caribbean Central Bank including its parent companies, subsidiary companies, predecessors, successors, affiliates, member firms, network members, agents, and employees.

9.     "Funds" shall mean (i) all monies denominated in U.S. Dollars received by the

Debtor from its depositors and (ii) the proceeds, also denominated in U.S. Dollars, of all assets of the Debtor realized or collected that were paid or transferred, at any time on or after June 1, 2010, to CCB.

10.    "NCBA" shall mean National Commercial Bank of Anguilla Ltd. including its parent companies, subsidiary companies, predecessors, successors, affiliates, member firms, network members, agents, and employees.

11.    "Request" or "Requests" refers to this Request for Production of Documents, including all requests for production contained herein, both individually and collectively.

12.    "You" or "Your" shall mean Bank of America, as defined herein, and shall include, without limitation, Bank of America's parent companies, subsidiary companies, predecessors, successors, affiliates, member firms, network members, agents, and employees, as well as the Person(s) answering this Request on behalf of such entity.

<u>**Instructions**</u>

1.    All words and phrases shall be construed as singular, plural, masculine, feminine or gender neutral as necessary to bring within the scope of these Requests any information discoverable under the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") or the Federal Rules of Civil Procedure (the "<u>Rules</u>").

2.    Unless otherwise stated herein, the time period applicable to these Requests shall be June 1, 2010, through the present.

3.    The terms "all," "any," and "each" shall each be construed as encompassing any and all.

4.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all responses that might

otherwise be construed to be outside of the scope.

5.      The term "including" shall be construed also to mean including but not limited to.

6.      Documents are to be produced in their full and unexpurgated form, together with all drafts and non-identical copies of each.

7.      In producing the documents requested herein, You should include the specific Request in response to which each Document is being produced.  Each Request shall be construed independently and not with reference to any other Request for the purpose of limitation.

8.      You must produce the Documents in the manner in which the Documents are kept in the ordinary course of business, indicating the file or files from which the Documents were taken.

9.      These Requests call for the production of the described Documents that are in Your possession, custody or control, including those in the possession, custody or control of Your respective agents, representatives, accountants or attorneys.

10.      The fact that a Document is produced by another party or non-party does not relieve you of the obligation to produce your copy of the same Document, even if the two Documents are identical.

11.      If any Document requested herein was formerly in Your possession, custody or control, or Your respective agents', representatives', accountants' or attorneys' control, and has been lost or destroyed or otherwise disposed of, You are requested to submit in lieu of any such Document, a written statement:

(a) describing the nature of the Document and its contents;

(b) identifying the person(s) who prepared or authored the Document and, if applicable,

the person(s) to whom the Document was sent;

(c) specifying the date on which the Document was prepared or transmitted; and

(d) specifying the date on which the Document was lost or destroyed and, if destroyed, the reasons for such destruction and the person(s) requesting and performing the destruction.

12.     If and when a Document responsive to any of these Requests for production is being withheld by You based on any claim of privilege, provide, in writing, the following information with respect to each Request to which You are asserting the privilege:

(a)     the nature of the privilege (including work product) which is being claimed and, if the privilege is governed by state law, the state's privilege law being invoked;

(b)     the type of Document, *e.g.,* letter or memorandum;

(c)     the general subject matter of the Document;

(d)     the date of the Document; and

(e)     such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the author of the Document, the addressees of the Document, and any other recipients shown in the Document, and, where not apparent, the relationship of the author, addressees and recipients to each other.

13.     If you object to any request or any part of a request, you should state the objection and specify the ground(s) for the objection.

14.     These Requests are continuing in nature and require the supplemental production of Documents if, after producing the requested Documents, you obtain or discover additional responsive Documents.  Such supplemental production of Documents should be served within ten (10) days after you discover or learn of the existence of such additional responsive

Documents.

## **Documents Requested**

1.      All Documents regarding the beneficiaries of CCB's account at Bank of America into which the Funds were deposited, and all ledgers or other documents regarding such beneficiaries' respective interests in the Funds in such account.

2.      All Documents identifying the authorized signatories for the Bank of America account(s) into which the Funds were deposited.

3.      All Documents concerning the decision by the Conservator Directors or any other person to transfer, or to cause the transfer, of the Funds from the Debtor to CCB.

4.      All Documents concerning the authority of the Conservator Directors or any other person to transfer, or to cause the transfer, of the Funds from the Debtor to CCB.

5.      All Documents concerning the payment or transfer of Funds from the Debtor to CCB.

6.      All Documents concerning the value or consideration given by CCB, or any other person, in exchange for the payment or transfer of the Funds to CCB.

7.      All Documents identifying the person or entity in control or possession of any or all of the Funds at any time, including the present.

8.      All Documents between CCB, on the one hand, and any of (a) the ECCB, (b) NCBA, (c) Debtor, or (d) any other person, on the other hand, concerning the Funds.

9.      All Documents between NCBA, on the one hand, and any of (a) the ECCB, (b) CCB, (c) Debtor, or (d) any other person, on the other hand, concerning the Funds.

10.      All Documents concerning CCB's payment or transfer of the Funds back to the Debtor or paid out on its behalf.

11.     All Documents concerning CCB's ability or inability to pay or transfer the Funds back to the Debtor.

12.     All Documents concerning NCBA's payment or transfer of the Funds back to the Debtor.

13.     All Documents concerning NCBA's ability or inability to pay or transfer the Funds back to the Debtor.

14.     .

15.     All account statements and detailed daily transaction records between the Debtor and CCB.

16.     All general ledgers regarding claims or balances between the Debtor and CCB.

17.     All account statements for any deposit or other account in which the Funds were deposited or transferred.

18.     All communications between the Conservator Directors, on the one hand, and any officer, director, or administrator (including, without limitation, William Tacon) of Debtor, or any of the ECCB or NCBA, on the other hand, regarding the Funds.

19.     All Documents concerning whether CCB was solvent or insolvent on a balance sheet test.

20.     All Documents concerning whether CCB was generally paying its debts as they fell due.

21.     All Documents concerning whether the Debtor was solvent or insolvent on a balance sheet test.

22.     All Documents concerning whether the Debtor was generally paying its debts as they fell due.

23.     All Documents concerning any agreements to which the Debtor and CCB were or are both a party.

24.     All Documents evidencing any indebtedness, and the classification of the same, between the Debtor and CCB.

25.     All Documents evidencing CCB's transfer of any Funds to a person or entity other than the Debtor.